**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-40414
Summary Calendar

EDWARD C. MANGE, HDLH ENTERPRISES, INC.,
Plaintiffs-Appellants,

VERSUS

COMMERCIAL METALS COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas
(C-96-CV-123)
January 12, 1998

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

This case comes from a decision of the United States District Court for the Southern District of Texas, Judge Janis Graham Jack, presiding, granting summary judgment in favor of the Defendant-Appellee, Commercial Metals Company ("CMC"). Upon review of the briefs, motions, and record on file, we find no reversible error or abuse of discretion on the part of the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court, and we therefore AFFIRM the decision of the district court.

**Background**

On July 11, 1995, Edward Mange ("Mange") and HDLH Enterprises, Inc. ("HDLH"), the Plaintiff-Appellants (hereafter collectively referred to as "HDLH", including counsel for the Plaintiff-Appellees), instituted an adversary proceeding in United States Bankruptcy Court for the Southern District of Texas against Commercial Metals Company ("CMC") and Reynolds Metals Company ("RMC").  Reynolds was dismissed after a settlement in October of 1995.  On February 14, 1996, upon motions of the parties, the bankruptcy court recommended that this case be transferred to the United States District Court for the Southern District of Texas, Corpus Christi Division.  This transfer recommendation was adopted by the district court on March 18, 1996.

HDLH claimed that CMC's activities between 1986 and 1992 violated Sections One and Two of the Sherman Antitrust Act.  15 U.S.C. §1 and §2.  HDLH also claimed that CMC violated Section Seven of the Clayton Act, and that HDLH also made state civil conspiracy claims against CMC.  15 U.S.C. §18.  HDLH claimed that CMC engaged in predatory pricing practices in order to destroy HDLH and create a local monopoly in the business of scrap metal

2

recycling and resale, a business in which HDLH and CMC were competitors.  The case went before Judge Janis Graham Jack.  On March 12, 1997, Judge Jack granted summary judgment in favor of CMC on all counts.  HDLH timely appealed, and the matter now lies before this Circuit.

## Standard of Review

This Court reviews a trial court's evidentiary rulings under the manifest error standard of review.  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1991), *cert. denied*, 506 U.S. 832 (1992); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991)(en banc), *cert. denied*, 503 U.S. 912 (1992).  With the record defined, the trial court's summary judgment is reviewed de novo.  *Skotak*, 953 F.2d at 916.  If the exclusion is upheld, the second level inquiry regarding the decision for summary judgment becomes academic.  *Christophersen*, 939 F.2d at 1109.  The standard of review for a denial of a continuance under Rule 56(f) of the Federal Rules of Civil Procedure is abuse of discretion.  *Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1991).

## Analysis

The central issue in this matter is the exclusion of evidence which HDLH received from Walter Briones ("Briones").

3

This evidence (the "Briones Evidence") was excluded by Judge Jack from the case.  HDLH states that the Briones Evidence is key to their case, and without the Briones Evidence, they have no case.  In fact, they conceded the Sherman Act claims of their case because they knew that they could not prove them without the Briones Evidence (HDLH calls this concession a result of "judicial duress" and not a true concession).  CMC basically agrees that the Briones Evidence is the key to HDLH's case.  We agree as well.  Without the Briones Evidence, HDLH has no case, and, as the standard of review cited states, if the exclusion is proper, the second part of the analysis becomes academic.  The central matter, then, for the purposes of deciding whether summary judgment was proper, is the decision as to whether the Briones Evidence was properly excluded.

We hold that the Briones Evidence was properly excluded.  As stated, we give a large amount of deference to the trial court in its decisions regarding the admissibility of evidence, and will reverse only if there is an abuse of discretion which led to a manifest error in judgment.  No such abuse or error exists here.

Judge Jack based her decision on several factors.  First, Judge Jack had great concerns about the fact that Briones was paid $50,000 for this evidence.  Further, Judge Jack was concerned with the fact that HDLH gave different explanations at different times for this payment, which was paid in installments.  At one point, HDLH claimed that this payment was

4

made because it was less expensive than paying for Briones to copy the documents, a claim which was later admitted to be untrue, and an estimate for the cost of copying was never made. This payment was made before the Briones Evidence was even seen by HDLH. HDLH claims that this was done because they feared that Briones would destroy the evidence, and that this was, in a sense, payment of blackmail. HDLH does not bring in evidence to back its claims (including its claim that Mange thought Briones was a convicted felon, a fact easily proven or disproven), and in the end we are left with little more than allegations. Further, no attempt was made to subpoena the Briones Evidence, an option which would be both inexpensive and cover any real concerns about destruction of evidence. Judge Jack stated that the fact that HDLH gave different (and contradictory) reasons at different points regarding the events surrounding its acquisition of the Briones Evidence was central to her decision to exclude the evidence. We do not consider this to be manifest error, and in fact, is quite reasonable, given the situation. If a judge believes that a party has not been forthright regarding the acquisition of certain evidence, it is reasonable for the judge to exclude that evidence.

Also, HDLH signed a non-prosecution agreement with Briones just before the suit against CMC was filed, creating a certain smell of collusion in the air (which is rather ironic, given that HDLH was accusing CMC of colluding with Briones). Further, the

5

documents in the Briones Evidence were mixed and reshuffled while in the hands of HDLH to such an extent that when the documents where produced to CMC, they were in a different format and organization than when HDLH acquired them. There was no assurance that the records produced were a complete, unaltered set of the documents originally received by HDLH, and Briones himself could not authenticate the documents in a later deposition. These factors, coupled with Judge Jack's belief that the Briones Evidence would be more prejudicial than probative, support Judge Jack's decision to exclude the Briones Evidence.

The Rule 56(f) issue is related to the Briones Evidence, in that the request for continuance was made in response to the exclusion of the Briones Evidence. FED.R.CIV.P. 56(f). This motion was essentially a motion to start over. It appears that HDLH did not review the documents proffered by CMC with appropriate diligence during the original discovery period, focused too much of its attention on the Briones Evidence, and did not meet the district court's deadlines regarding expert witnesses. While this is unfortunate for HDLH, it is necessary for trial court judges to set specific deadlines for discovery and have those deadlines met, or else litigation would drag on forever. In fact, the district court warned the parties early on in the discovery process that continuances would not be forthcoming if based on a party's failure to obtain discovery. Judge Jack did not give HDLH a "Death Penalty" in regard to the

gathering of evidence.  HDLH should have gotten its act together during the normal discovery period, and the fact that they relied on the Briones Evidence to such an extent that its exclusion destroyed their case is an error on their part, not on the part of Judge Jack.  We therefore affirm her decision not to grant the continuance.

Also, HDLH claims that Judge Jack's decision to grant summary judgment was based on a mistaken interpretation of standing for the purposes of Sherman Act litigation.  There is no evidence of that in the her decision.  She made it clear that her decision was based on the inability of HDLH to prove its case to the degree necessary to overcome summary judgment.  The only mention of standing is in regard to the Section One claim, and this statement does not go into any real detail regarding whether or not she considered the "raising rival's costs" theory of standing.  At any rate, the one mention of standing is not dispositive of any issue (the Section One claim dismissal is clearly based on a HDLH's inability to prove the elements of the claim), and does not constitute reversible error.

Last, as a procedural matter, CMC states that under Rule 103 of the Federal Rules of Evidence, HDLH should have made an offer of proof in order to preserve the issue of the exclusion of the Briones Evidence for appeal.  FED.R.EVID. 103(a).  HDLH states that they did not do so because Judge Jack stated that the issue of the Briones Evidence was not to be discussed in regard to

7

summary judgment again.  While it is true that Judge Jack was clear on this matter, this did not relieve them of an obligation to at least make a motion for an offer of proof.  We have no reason to believe that simply making a motion would lead to such grave consequences for HDLH's counsel that their responsibility to make such motions is eliminated.  While in practice, given the rest of this decision, the Rule 103 issue is largely a moot point, it is a matter which deserved commentary.

Another matter in this appeal regards Paul Bartlett ("Bartlett"), one of HDLH's attorneys at an earlier stage in this litigation.  Bartlett, aside from representing HDLH, was also serving as an expert witness against CMC in another case.  Judge Jack believed this would constitute a potential conflict of interest, and was concerned that confidential information from these proceedings (which were under a strict protective order) could be seen by Bartlett.  She asked Bartlett to choose between the cases, and he chose to step down as counsel for HDLH in this case.  HDLH claims that this was harmful to them, due to Bartlett's expertise in antitrust law.  HDLH makes no showing of specific harm due to Bartlett's withdrawal, and HDLH could easily have retained other antitrust counsel during this period.  Judge Jack was correct in her view that a conflict of interest could occur, and that it was possible that Bartlett would be exposed to information he should not be exposed to.  Her decision was proper.

## Conclusion

Judge Jack's actions in this case did not constitute abuse of discretion or manifest error, and were not arbitrary or unreasonable.  We therefore AFFIRM the decision of the district court.

AFFIRMED.