Mary Diane **HIGGENBOTHAM,**
**Plaintiff-Appellant,**

v.

**OCHSNER FOUNDATION HOSPITAL et al., Defendants-Appellees.**

No. 77–2310.

United States Court of Appeals,
Fifth Circuit.

Nov. 27, 1979.

Darleen M. Jacobs, New Orleans, La., for plaintiff-appellant.

Henry Alsobrook, Jr., New Orleans, La., for defendants-appellees.

Before FAY, RUBIN, and HATCHETT, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Too often the apparent shortcut to decision by way of an inviting motion for summary judgment turns out to be a difficult and time wasting detour. Allured by the defendant's invitation, the trial judge in this case dismissed summarily a medical malpractice suit on the basis that the claim had prescribed. We conclude that he turned off the main road too soon.

Relying on diversity of citizenship, and, therefore, making our decision subject to Louisiana law, Mrs. Higgenbotham filed a suit for personal injury as a result of alleged negligence on the part of the staff of a hospital. She had entered Ochsner Foundation Hospital for the purpose of brain surgery.[1] The operation was performed on February 7, 1972. In order to help her breathe, the surgeon also performed a tracheotomy, opening a passage to her windpipe and inserting a tube. Mrs. Higgenbotham began to recover normally. It is, however, necessary for a patient who has undergone a tracheotomy to resume normal breathing. In order for her to accomplish this, she must undergo a process called weaning. An obstruction, usually a cork, is placed in the tube inserted in the windpipe, forcing the patient to breathe through her nose. If breathing becomes too difficult, the obstruction is removed. After an interval, the obstruction is again inserted for what will likely be a longer interval. This continues until the patient can function without the use of a trachea tube.

While there is considerable dispute about what happened after Mrs. Higgenbotham's tube was first blocked, and particularly about when it happened, matters we shall shortly discuss, the defendant hospital contends that on February 13, 1972 its employees began the attempt to wean the patient from the tube. The patient contends that on February 15 the hospital staff corked the trachea tube but negligently failed to remove an inner tube obstructing her air passage, thus depriving her of a supply of oxygen to her lungs. She further contends that the cork was not removed until February 16, and that, as a result of the insertion of the cork without removal of the inner air block, she suffered serious injury.

Mrs. Higgenbotham filed suit on February 15, 1973. Relying on medical records, the defendants contend that, because the obstruction was inserted on February 13, the prescriptive period began then, and, therefore, when suit was filed on February 15 of the next year, it was too late. There are two difficulties with this proposition: first, the date when the cork was inserted is disputed, and the mere fact that the medical records say it was done on a certain date does not render the date indisputable; and, second, on that date the patient asserts, with some plausibility and support from depositions in the record, that she could not have been aware that she had been injured.

Excerpts from the hospital records are set forth in the margin.[2] They do not

---

1. Right suboccipital craniotomy with the removal of an acoustic neuroma.

2. The medical records with the doctor's orders contain the following entries:
 FEB 12 1972 [DATE STAMP]
 * * * * * *
 [Handwritten] Leave obstructor in trach today if well tolerated.
 * * * * * *
 FEB 13 1972 [DATE STAMP]

 [Handwritten] Obstructor in trach tube as ordered yesterday.
 * * * * * *
 The nursing notes contain these entries:
 FEB 13 1972 [DATE STAMP]
 * * * * * *
 [Handwritten] 2:00 Obstructer [sic] applied to trach tube. Pt [patient] appears apprehensive but is adjusting well to obstructer [sic] & breathing well
 * * * * * *

establish beyond question whether, if the patient suffered any injury from the cause she contends, it occurred on February 13 or on some day thereafter. They do contain indications that her trachea tube was corked on February 13, but they also show that the obstruction was removed on February 14 and the tube was again corked later. However, the plaintiff's complaint and her memorandum in opposition to the motion for summary judgment both state that the trachea tube was corked improperly on February 15. Moreover, the plaintiff's deposition, which was filed in the record, asserts that the trachea was corked on February 15: "That was the day after Valentine's, I remember, because my husband gave me a present and all." She also stated that the cork was not removed until the morning of the 16th. This contention was enough to create a genuine dispute about a material fact: when was the injury sustained?

■ The Louisiana prescriptive period for torts is one year. La.Civ.Code Ann. art.

> 3–11 [apparently a reference to a later duty shift]
> Tolerating cork in trach
> 4:30
> \* \* \* \* \* \*
> Up in chair for few minutes. Began whinning [sic] when placed back in bed. States "head ache."
> \* \* \* \* \* \*
> FEB 14 1972 [DATE STAMP]
> [Handwritten]
> 11–7
> \* \* \* \* \* \*
> Pt. sleeping a [sic] intervals—seems to be tolerating corked trach well.
> \* \* \* \* \* \*
> 4:20 Respiration a bit noisey [sic]—sound like mucous behind plug.
> 6:00 unplugged . . . small amt mucus on dressing & . . . suction.
> \* \* \* \* \* \*
> 7–3 Cork removed from trach—tape applied over trach per Dr. Clifford, Sleepy this A.M., but arouses easily. Not trying to talk like yesterday.
> \* \* \* \* \* \*
> FEB 15 1972 [DATE STAMP]
> \* \* \* \* \* \*
> [Handwritten]
> 11–7 Asleep—easy resp. reg.
> \* \* \* \* \* \*
> 2:20 Rested better tonight—no resp. distress.
> \* \* \* \* \* \*
> 6:45 Seems more alert.

3536 (West 1953). That period begins on the day when damage was sustained. *Id.* art. 3537. We start then with a genuine dispute about what that date was. It is bootless to contend, as defendants did on oral argument, that, although the deposition was filed in the record, it could properly be ignored by the judge in ruling on the motion for summary judgment because plaintiff's counsel did not in some manner bring it directly to the judge's attention. Fed.R.Civ.P. 56(c) provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The rule does not distinguish between depositions merely filed and those singled out by counsel for special attention.[3] Nor is

> \* \* \* \* \* \*
> 10:00 Still not trying to talk—appears more awake today.
> \* \* \* \* \* \*
> 1:00 Has tolerated trach being taped these hours.
> 3–11 Tolerating trach well.
> \* \* \* \* \* \*
> FEB 16 1972 [DATE STAMP]
> \* \* \* \* \* \*
> [Handwritten]
> 3–11 Pt. asleep, arouses suddenly. Began having tremors. Became apprehensive, trying to take deep breaths. . . . Sounds congested. Suctioned.
> FEB 17 1972 [DATE STAMP]
> \* \* \* \* \* \*
> [Handwritten]
> 2:00 \* \* \* Trach corked.
> \* \* \* \* \* \*
> 8:00 Trach removed per Dr. Clifford.

**3.** In this instance, as in many, we reverse the court for error in a matter in which it did not receive the assistance it was due from counsel. Plaintiff's counsel had good reason not to attend oral argument on the motion for summary judgment because she had a trial in another court. She did not, however, call the court's attention by memorandum or otherwise to the deposition in the record. Defense counsel was content to submit its case in the most favorable posture without alerting the court to the minefield in the path he invited the court to take.

this a case where the deposition that created the dispute was a needle in a paper haystack; the docket sheet shows that only five depositions were filed.

■ This factual dispute about the date prescription began would alone warrant denial of the motion for summary judgment. Rule 56 permits a summary judgment only when there are no disputed questions of material fact. A claim barred by the applicable statute of limitations may properly be disposed of by summary judgment. *Ayers v. Davidson*, 5 Cir. 1960, 285 F.2d 137. However, if there is a disputed factual issue about whether the suit was timely brought, the plaintiff must be allowed to present evidence on this issue. *Sheets v. Burman*, 5 Cir. 1963, 322 F.2d 277; *R. J. Reynolds Tobacco Co. v. Hudson*, 5 Cir. 1963, 314 F.2d 776.

Because the parties have also briefed the legal issue concerning whether the prescriptive period began on the date of injury or at some later time when the patient discovered that she had suffered harm, and because consideration of that question is essential to further proceedings, we turn to it.

There is a separate dispute about when Mrs. Higgenbotham first became conscious of an injury apart from the difficulty in breathing deliberately caused by weaning (which was to be expected as part of her recovery). Her position is that several days or more elapsed between the time the cork was inserted and the time when she became aware that she was not experiencing merely those problems incident to normal recovery. Buttress for this contention is found both in her serious condition, as reflected by the hospital records, and her own testimony.

Many tort victims know that they have suffered injury on the day the tort occurs.

However, a person who sustains an injury during a medical procedure may have no knowledge that she has suffered any injury beyond that normally incident to such a procedure properly conducted; that is, she may be completely unaware that she has sustained any harm as a result of possible negligence.

■ Louisiana courts have long and consistently held that prescription for torts commences on the day the plaintiff actually knows or should know that she has sustained some damage. *See Dean v. Hercules, Inc.*, La.1976, 328 So.2d 69, 73 (prescriptive period runs from the date the damage becomes apparent); *Lucas v. Commercial Union Insurance Co.*, La.App.1967, 198 So.2d 560, 564 (prescription does not run until plaintiff has knowledge of both the tort and the damage); *cf. Butler v. Fidelity & Casualty Co.*, La.App.1968, 207 So.2d 805, 806 (when there is a delay between the commission of the tort and the occurrence of damage, prescription does not begin to run until the latter date). This means that prescription of a malpractice claim does not commence when the patient is aware that the doctor was negligent; the period begins when she knows or should know of some injury not likely to be the result of a properly conducted procedure.

Whatever doubt there might have been about the Louisiana rule was composed by the Louisiana Supreme Court decision in *Henson v. St. Paul Fire and Marine Insurance Co.*, La.1978, 363 So.2d 711, rendered after the district court's ruling but almost a year before we heard this appeal, and inexplicably not referred to by counsel despite our request that they call to our attention pertinent intervening decisions.[4] In that case the court said:

---

4. Because of the delay between the time briefs are filed and the appeal is heard, the court sends a notice to counsel in the following form:
 It now appears likely that this case will be scheduled for oral argument during the week of [date filled in] on a yet undetermined date. Because of the unavoidable delay in calendaring of cases occasioned by the court's extremely large caseload, it is believed that since the filing of the briefs herein, there may

have been intervening decisions of this court and other courts, including the Supreme Court of the United States, which affect the outcome of this case.
 Therefore, by *letter* to the Clerk, counsel may comment briefly on any relevant intervening decisions that have been rendered since their last briefs were filed. The *letter* should be filed in four typewritten copies, with service on opposing counsel, not later than 20 days

Basically, prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, as long as such ignorance is not willful and does not result from his neglect.

363 So.2d at 713.

In applying this rule to the facts of the malpractice case before it, the *Henson* court emphasized that the "plaintiff did not have knowledge of the existence of facts that would entitle him to bring suit until eight months elapsed without abatement of the symptoms following his visit to Dr. Cox." *Id.*

 We do not intimate that there is any evidence that the plaintiff was misled in any way by the defendant or any of its employees. For present purposes we assume that they acted in complete good faith. But, however bona fide their advice, however sincere their subjective belief in the professional quality of their treatment, however ill-founded they might honestly consider any suggestion of lack of skill, their state of mind does not control the

time when prescription begins. The knowledge we look to is the patient's: what she knew or reasonably should have known. We set to one side as irrelevant (on the facts now known from the depositions and pleadings) the cases that turn on representations by the treating doctor that might create an estoppel.[5] Even though a physician be of the utmost probity, manifest the greatest devotion to his patients and demonstrate complete candor in his discussions with and his disclosures to a patient, the time period within which a suit for the physician's negligence may be filed in Louisiana does not begin until the patient is at least aware of some bodily injury that might have resulted from improper treatment.[6]

Thus, under settled principles of Louisiana jurisprudence, prescription did not begin until the day when Mrs. Higgenbotham knew or should have known that something was amiss with her breathing. The hospital records and the depositions of a doctor and a nurse make it clear that Mrs. Higgenbotham would have suffered discomfort and

from the date of this notice. (emphasis in original)

5. *See, e. g., Sheets v. Burman*, 5 Cir. 1963, 322 F.2d 277, 280; *Steel v. Aetna Life & Casualty*, La.App.1974, 304 So.2d 861.

6. This also is the prevailing view at common law. *See* Restatement (Second) of Torts § 899, Comment e (1979), which states in part:

One group of cases in which there has been extensive departure from the earlier rule that the statute of limitations runs although the plaintiff has no knowledge of the injury has involved actions for medical malpractice. Two reasons can be suggested as to why there has been a change in the rule in many jurisdictions in this area. One is the fact that in most instances the statutory period within which the action must be initiated is short— one year, or at most two, being the common time limit. This is for the purpose of protecting physicians against unjustified claims; but since many of the consequences of medical malpractice often do not become known or apparent for a period longer than that of the statute, the injured plaintiff is left without a remedy. The second reason is that the nature of the tort itself and the character of the injury will frequently prevent knowledge of what is wrong, so that the plaintiff is forced

to rely upon what he is told by the physician or surgeon.

There are still courts that proceed to apply the rule that the action is barred by the statute even though there has been no knowledge that it could be brought. Many of them, however, have resorted to various devices to extend the time of the statute. Thus the negligent treatment or the defendant's duty to disclose the injury is held to continue until the relation of doctor and patient is ended, or the court finds fraudulent concealment or nondisclosure of the injury, tolling the running of the statute; or failure to discover and remove a foreign object left in the plaintiff's body is held to be continuing negligence, not yet terminated.

In a wave of recent decisions these various devices have been replaced by decisions meeting the issue directly and holding that the statute must be construed as not intended to start to run until the plaintiff has in fact discovered the fact that he has suffered injury or by the exercise of reasonable diligence should have discovered it. There have also been a number of instances in which a similar rule has been applied to other professional malpractice, such as that of attorneys or accountants and the rule may thus become a general one.

difficulty when the weaning process began. When a cork was first inserted in her trachea tube she could not know from the mere fact of difficulty in breathing that anything out of the normal course was happening, for the very nature of the weaning process makes it difficult for the patient to breathe. When Mrs. Higgenbotham first knew or should have known of injury is, of course, to be resolved by the court below based on the Louisiana jurisprudence summarized in this opinion.

For these reasons, the summary judgment is REVERSED and the case is REMANDED for further proceedings consistent herewith.