**Sylvia J. MILLER, Plaintiff,**

v.

**ELEGANT JUNK, et al., Defendants.**

**Civ. A. No. 84–A036.**

United States District Court, S.D. West Virginia, Parkersburg Division.

Aug. 20, 1985.

Elizabeth Pyles, Parkersburg, W.Va., for plaintiff.

James W. St. Clair, Marshall & St. Clair, Huntington, W.Va., for Public Indus.

Thomas C. Scott, Scott, Walker & Kuehnle, Columbus, Ohio, for Elegant Junk.

MEMORANDUM OPINION
AND ORDER

HADEN, Chief Judge.

Pending before the Court is the motion of the Defendant, Public Industrial Loan Company (Public Finance), for summary judgment in this action brought under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*

### I. *Background*

The Plaintiff, Sylvia J. Miller, is a married woman. She is a resident of Parkersburg, West Virginia. On or about June 15, 1983, Mrs. Miller visited a retail furniture store in Parkersburg named Elegant Junk. Seeing a couple of loveseats in the store which appealed to her, she sought to buy them. An employee informed Mrs. Miller that the store would arrange credit for her

through Public Finance. Mrs. Miller then completed an application with the understanding that it would be forwarded to Public Finance. The next day an employee of Elegant Junk told Mrs. Miller that her application was denied unless her husband signed as co-debtor. Upon calling Public Finance, Mrs. Miller was told that her application had been approved. Accordingly, she went back to the store that day and signed the credit application. Later that day, however, an employee of Public Finance called to tell her that her application was in fact denied unless her husband co-signed. Still wanting to purchase the loveseats, Mrs. Miller arranged for her husband to sign the credit application. The application was then approved and Mrs. Miller took possession of the loveseats. She later paid off the finance debt in six timely installments.

Alleging that she was discriminated against because of her sex and marital status, Mrs. Miller has brought this suit against Elegant Junk and Public Finance. As a result of Elegant Junk's petition in bankruptcy, the proceedings against it have been stayed. Public Finance now wishes to exit by way of the summary judgment motion.

## II. *Discussion*

### A. *The Statute.*

This action is entirely a creature of 15 U.S.C. § 1691. That section prohibits creditors from discriminating against credit applicants "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). A proviso to that section allows a creditor "to make an inquiry of marital status if such inquiry is for the purpose of ascertaining the creditor's rights and remedies applicable to the particular extension of credit and not to discriminate in the determination of credit worthiness." 15 U.S.C. § 1691(b)(1). Another section, 15 U.S.C. § 1691(d), permits a creditor to consider to a certain extent the applicability of state law in, say, requiring the signatures of both parties to a marriage for the purposes of creating a valid lien. Otherwise, Section 1691 evinces

a legislative intent to prohibit extensions of credit which take into consideration sex or marital status. The intent is clearly spelled out in the congressional findings and statement of purpose accompanying this statute.

"The Congress finds that there is a need to ensure that the various financial institutions and other firms engaged in the extensions of credit exercise their responsibility to make credit available with fairness, impartiality, and without discrimination on the basis of sex or marital status.... It is the purpose of this Act to require that financial institutions and other firms engaged in the extension of credit make that credit equally available to all credit worthy customers without regard to sex or marital status."

Equal Credit Opportunity Act, Pub.L. No. 93–495, § 502, 88 Stat. 1511 (1974).

### B. *The Defendant's Motion.*

Public Finance submits two arguments in support of its motion for summary judgment. First, it contends generally that it did not violate the Equal Credit Opportunity Act. Second, Public Finance argues that even if it did violate the Act, Mrs. Miller did not suffer any resulting damages. The Court's disposition of this case on the Defendant's first argument negates the need to discuss the second.

In support of its motion, Public Finance attached thereto a copy of Mrs. Miller's deposition and a copy of the credit application. It did not attach a copy of the letter from Public Finance informing Mrs. Miller that her credit application had been denied or a copy of the letter from Public Finance entitled "Reasons for Adverse Action Concerning Credit." These two letters, however, were attached to the integrated pretrial order submitted by both parties' counsel on the day of the pretrial conference. The question is whether the Court can consider these two exhibits to the pretrial order in ruling on Public Finance's summary judgment motion.

*Rule* 56(c) of the Federal Rules of Civil Procedure, provides that summary judg-

ment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Given the above categories, the exhibits would appear to fall outside the scope of review for a summary judgment motion, but a closer examination indicates the contrary.

The pretrial order submitted to the Court at the pretrial conference is an integrated document. By "integrated" it is meant that the order was the combined work of counsel for both parties. Although the order is a joint effort, it does contain, by its nature, opposing viewpoints by counsel on various issues. As to the exhibits, however, the order is silent. Neither party objects to their inclusion nor expresses doubt as to their authenticity. Although the order does not reflect which side initiated their inclusion, the Plaintiff's counsel does indicate in the pretrial order that she will use the two letters as exhibits at trial. The defense counsel does not so indicate. In any event, the exhibits having been submitted in such a manner as to indicate no controversy between the parties on the question of their accuracy, the Court deems them to have the characteristics of stipulated material, or, in the alternative, to be of the nature of an admission. A summary judgment may be based on matter deemed admitted. *Home Indemnity Co. v. Famularo,* 530 F.Supp. 797 (D.Col.1982); *see also Brown v. Ford Motor Co.,* 57 F.Supp. 825 (E.D.Mich.1944) (summary judgment can be based on admissions on file, including the admissions incorporated in formal pretrial order).

If the exhibits were appended at the behest of the Plaintiff, counsel cannot complain of the Court's review since *"Rule* 56(c) does not exclude the grant of summary judgment on the basis of materials originating entirely with the opponent of the motion." *In Re Japanese Electronic Products,* 723 F.2d 238 (3d Cir.1983). Neither is it objectionable that the Defendant's counsel did not specifically single out for

the Court's attention the two exhibits. *Higgenbotham v. Ochsner Foundation Hospital,* 607 F.2d 653 (5th Cir.1979). *Rule* 56 "does not limit the Court's examination to issues raised in affidavits or to record evidence pinpointed in the parties' memorandum." *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922 (1st Cir.1983).

■ Turning to the contents of the exhibits, the Court notes their relevance to Public Finance's claim that it did not discriminate against the Plaintiff, Mrs. Miller. The letter giving the reasons for Mrs. Miller's denial of credit is a form letter. It lists 19 possible reasons for denying credit to an applicant. In Mrs. Miller's case, the boxes opposite "Insufficient income" and "Excessive obligations" are marked as applicable. At the bottom of the page, the Defendant notes, also in a form manner, that the information pertaining to excessive obligations was reported by a "consumer reporting agency." This information is relevant because it goes to Mrs. Miller's credit worthiness. If Public Finance denied Mrs. Miller's credit application on the basis of creditworthiness instead of her marital status or sex, it would have an absolute defense to this action.

The basis for the defense of creditworthiness can be found in the regulations issued by the Board of Governors of the Federal Reserve System pursuant to the Equal Credit Opportunity Act.

"Except as provided in this subsection, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument *if the applicant "qualifies under the creditor's standards of credit worthiness* for the amount in terms of the credit requested."

12 C.F.R. 202.7(d)(1) (1985) (emphasis added).

This defense is also reflected in the congressional intent of making "credit equally available to all *creditworthy* customers without regard to sex or marital status." Equal Credit Opportunity Act, Pub.L. No.

93–495, § 502, 88 Stat. 1511 (1974) (emphasis added).

Public Finance has thus raised the issue of the credit worthiness of Mrs. Miller. Furthermore, it submits that it based that creditworthiness on information received from a credit reporting agency. These facts, if uncontroverted, would entitled Public Finance to summary judgment as a matter of law in this discrimination-based action. Hence, Public Finance having raised the issue, the burden shifts to Mrs. Miller to show that summary judgment is inappropriate. *Stepanischen, supra,* 722 F.2d at 929.

To controvert the claimed reliance of Public Finance on the credit reporting agency, Mrs. Miller has submitted an affidavit detailing her income and obligations. The figures reflected in the affidavit may indeed have some bearing on the credit worthiness of Mrs. Miller; however, because she is claiming discrimination on the part of Public Finance, Mrs. Miller must do more than show her good financial state. She must make some showing that the credit reporting agency accurately reported her financial state to Public Finance. This is not requiring the Plaintiff to prove her case prior to trial. The point of the matter is that the record now reflects an uncontroverted fact presented by the Defendant—a fact which provides the Defendant an absolute defense to a claim of discrimination. If the fact is not controverted, summary judgment is appropriate.

Congress has explicitly recognized the reliance which credit institutions place upon credit reporting agencies. "The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1). Consequently, Congress has provided guidelines to be followed by consumer credit reporting agencies. In particular, Congress has dictated that the preparers of consumer reports must follow reasonable procedures to assure maximum possible accuracy of the information reported on an individual. 15 U.S.C. § 1681e(b). The statutory scheme also provides for "a complete and accurate disclosure of the nature and scope of the investigation requested" to the consumer. 15 U.S.C. § 1681d(b). Furthermore, upon request the consumer can obtain the nature and substance of all information on the consumer in the files of the reporting agency. 15 U.S.C. § 1681g(a)(1). These references to portions of the Fair Credit Reporting Act are relevant on three points: First, the Act reinforces the propriety exhibited by a lending institution, such as Public Finance, in relying upon information supplied by a credit reporting agency. Second, under the Act Mrs. Miller is provided with the right to gain access to information which could put Public Finance's reliance on the reporting agency in issue. Third, the Act suggests what may be the appropriate remedy for Mrs. Miller: an action against the reporting agency for supplying inaccurate information to a lending institution.

### III. *Conclusion*

This Court is cognizant of modern procedure's abhorrence for the pitfalls of pleading as suffered under the old common law form of pleading. It may appear that the Plaintiff has succumbed to a like predicament here; however, the basis for the burden placed upon the Plaintiff is explicitly set forth in the Federal Rules of Civil Procedure. *Rule* 56(e) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." The rule goes on to say that if a party "does not so respond, summary judgment, if appropriate, shall be entered against him." The Plaintiff not having controverted the fact of Public Finance's reliance upon the credit reporting agency in evaluating her creditworthiness, the Court holds summary judgment to be appropriate

in this instance. The Defendant's motion for summary judgment is hereby granted.*

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

---

* This action is also dismissed as to the bankrupt Defendant, Elegant Junk. It is clear that the actions it took in regard to Mrs. Miller were at the direction of Public Finance. Any defense asserted by Public Finance would also inure to the benefit of Elegant Junk.