IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 90-1256

_____

MARY FAYE SKOTAK, GEORGE JERRY SKOTAK,
and ERIC NORMAN SKOTAK,

Plaintiffs-Appellants-
Cross-Appellees,

v.

TENNECO RESINS, INC.,

Defendant-Appellee-
Cross-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

( March 26, 1992)

ON SUGGESTION FOR REHEARING EN BANC

Opinion February 3, 1992, 5 Cir., 1992, 953 F.2d 909

Before WISDOM, KING and BARKSDALE, Circuit Judges.

PER CURIAM:

Treating the suggestion for rehearing en banc as a petition
for panel rehearing, it is ordered that the petition for panel
rehearing is DENIED.  No member of the panel nor Judge in regular
active service of this Court having requested that the Court be
polled on rehearing en banc (Federal Rule of Appellate Procedure
and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.
The three February 3, 1992, opinions are revised as follows:

BARKSDALE, Circuit Judge:

Paragraph II.B. of my original opinion is withdrawn.


KING, Circuit Judge, concurring in the judgment:

I withdraw my original opinion and concur in the judgment without opinion.


WISDOM, Senior Circuit Judge, dissenting:

I withdraw my original dissenting opinion and substitute the following opinion:[*]

I respectfully dissent.

Judge Barksdale, for the majority of the Court, holds that the plaintiffs failed to show that there was a genuine issue for trial with respect to the adequacy of the manufacturer's warning of the risk of cancer from using Thorotrast.

The plaintiffs introduced in the record copies of two scientific articles and a letter to the Editor of Cancer bearing on the relationship between cancer and Thorotrast.

a. Article 1: Underwood & Hall, Thorotrast Associated Hepatic Angiosarcoma with 36 Years Latency, Cancer 42: 2610-12 (Dec. 1978);

b. Letter to editor, Thorium Dioxide and Liver Cancer, JAMA, Vol. 246, No. 16 (Oct. 16, 1981); and

c. Article 2: Benjamin & Albukerk, Thorotrast-Induced Angiosarcoma of Liver, N.Y. State J. Med., pp. 751-53 (Apr. 1982).

---

[*] I have incorporated in this opinion a large part of the opinion Judge King withdrew.

Article 1 referred to an April 1925 study (not introduced in the record) entitled "Some unrecognized dangers in the use and handling of radioactive substances". JAMA 85:1769-1776 (1925). The same article noted that in 1932 the American Medical Association's Council on Pharmacy and Chemistry disapproved of Heyden's introduction of Thorotrast into the United States. Both Articles 1 and 2 referred to a 1947 report in the American Journal of Pathology by McMahon, E., Murphy, A.S., and Bates, M.J., (not introduced in the record) documenting the link between cancer and Thorotrast. The report stated that the use of Thorotrast noticeably declined in the 1950's and continued to decline. The plaintiffs' attorney inartfully attached the articles as exhibits to the Skotaks' opposition to a motion to dismiss for lack of personal jurisdiction, apparently as part of the description of the "background" of their lawsuit. The Skotaks did not suggest the relevancy of the articles before or when TRI moved for summary judgment and did not assert the importance of the articles until they filed their reply brief in this court. It would seem likely that the Skotaks' attorney expected to introduce the articles in the trial on the merits. Nevertheless, they were in the record. We should consider the record as a whole in determining whether there was a dispute over a material fact.

Judge Barksdale would have the Court ignore these articles.

Based on the articles, a reasonable jury could make the following findings:

(1) Thorotrast is a radioactive contrast medium first developed and used in Germany in the 1920's.

3

(2) The relationship between radioactive chemicals and cancer was documented in a 1925 article by Martland, H.S., Conlan, P., and Knef, J.P. in the Journal of the American Medical Association entitled "Some Unrecognized Dangers in the Use and Handling of Radioactive Substances". JAMA 85:1769-1776 (1925).

(3) In 1932, based primarily on the findings of Martland, H.S., Conlan, P., and Knef, J.P. the American Medical Association's Council on Pharmacy and Chemistry disapproved of the introduction of Thorotrast in the United States.

(4) The relationship between Thorotrast and liver cancer was documented in a 1947 article by McMahon, E., Murphy A.S., and Bates, M.J., "Endothelial Cell Sarcoma of the Liver Following Thorotrast Injections". Am. J. Pathology, 23:586-611 (1947).

(5) Following the 1947 findings, a large number of reports surfaced linking cancer with previous administration of Thorotrast.

(6) As a result of these reports, the use of Thorotrast as a contrast medium quickly decreased, and by the mid-1950's Thorotrast was no longer used in the United States as a contrast medium.

This information would permit a jury to find that either of the possible warnings (quoted in Judge Barksdale's opinion) would have been inadequate for failing to mention the evidence linking radioactive chemicals and cancer, and for failing to mention McMahon's finding, of a link between Thorotrast and liver cancer.

Even though the testimony of the actual treating physician is unavailable, the timing of the marked decline in Thorotrast use following the release of information on the cancer risk would permit a reasonable jury to infer: (1) that most physicians were unaware of the cancer risks associated with Thorotrast before the information was released; and (2) once they became aware of the cancer risk, the vast majority of physicians switched to a

4

substitute contrast medium.  In the absence of specific evidence of the treating physician's actual knowledge and likely response, a jury could reasonably infer that Mr. Skotak's treating physician was likely to have the same information available, and would respond in the same manner, as the vast majority of physicians. The articles, therefore, raise a genuine issue of material fact with respect to the adequacy of the warning.

The result reached by Judge Barksdale is contrary to our holdings in Higgenbotham v. Ochsner Foundation Hospital,[1] Keiser v. Coliseum Properties, Inc.,[2] and Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.[3]  In those cases we held that, at least where the record is small (as it is in this case), a reviewing court must consider the entire record in determining whether there is a genuine issue of material fact.[4]  Although, except for Higgenbotham, Fifth Circuit cases touching on this question are not models of clarity, I conclude, unlike Judge Barksdale, that in the

---

[1]  607 F.2d 653 (5th Cir. 1979).

[2]  614 F.2d 406 (5th Cir. 1980).

[3]  695 F.2d 839 (5th Cir. 1983).

[4]  See Higgenbotham, 607 F.2d at 656-57; Keiser, 614 F.2d at 410; Nicholas Acoustics, 695 F.2d at 846.  Professors Wright, Miller, and Kane agree:  "The parties need not formally offer their outside matter as evidence or have it marked as an exhibit at the hearing on the motion.  Given this process, the court is obliged to take account of the entire setting of the case on a Rule 56 motion.  In addition to the pleadings, it will consider all papers of record, as well as any material prepared for the motion that meets the standard prescribed in Rule 56(e)."  10A Wright, Miller & Kane, Federal Practice and Procedure § 2721, at 44 (2d ed. 1983).

5

circumstances of this case precedent in the Fifth Circuit compels consideration of the evidence the Skotaks failed to point out.

Higgenbotham appears to have been the Circuit's first attempt to delineate the responsibilities of district and appellate judges in summary judgment proceedings when the nonmoving party neglects to point out evidence in its favor. In that case Judge Rubin, for the Court, held there that the district court should have considered a deposition filed but not singled out by the nonmovant for attention, especially where (as here) the record was small. In Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.[5] we did state that "an appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court."[6] It is unclear in that case, however, whether the nonmovant (1) failed to point out evidence to the district court; (2) made a new argument on appeal; or (3) referred on appeal to evidence which was never in the summary judgment record. The per curiam opinion recites no facts relating to this issue and is conspicuously silent on the nature of the nonmovant's default. In Frank C. Bailey, the citations to Munoz v. International Alliance of Theatrical Stage Employees[7] and Garcia v. American Marine Corp.[8] suggest that the appellant/nonmovant had introduced at the appellate stage facts that had never even been placed in the record before the district

---

[5] 582 F.2d 333 (5th Cir. 1978) (per curiam).

[6] Id. at 334.

[7] 563 F.2d 205 (5th Cir. 1977).

[8] 432 F.2d 6 (5th Cir. 1970) (per curiam).

6

court, for in those two cases the Court disapproved of such a method of attacking a summary judgment.[9]  I agree entirely with the holdings in Munoz and Garcia (and with Bailey, if I read it correctly), but introducing evidence before an appellate court that was never in the district court record is entirely different from failing to point out evidence that is already in the record.

Judge Barksdale's assertion that Nissho-Iwai American Corp. v. Kline,[10] Lavespere v. Niagara Mach. & Tool Works, Inc.[11] and Fields v. City of South Houston[12] state the accepted rule in this Circuit cannot withstand scrutiny.  First, Lavespere had nothing to do with the problem in this case.  At issue in Lavespere was whether the district court could consider evidentiary materials submitted by the opponent of summary judgment for the first time in a Fed. R. Civ. P. 59 motion for reconsideration.[13]  Judge Barksdale apparently focuses on the elaboration in Lavespere on Rule 56(e)'s language, but the court was merely repeating the uncontroversial proposition that a nonmoving party cannot defeat summary judgment by resting on its pleadings or allegations.  (This is also the import of the passage Judge Barksdale quoted from Dorsett v. Board of Trustees

---

[9]  See Munoz, 563 F.2d at 209; Garcia, 432 F.2d at 8.

[10]  845 F.2d 1300 (5th Cir. 1988).

[11]  910 F.2d 167 (5th Cir. 1990).

[12]  922 F.2d 1183 (5th Cir. 1991).

[13]  Lavespere, 910 F.2d at 172-73.

7

for State Colleges & Universities.[14])  Neither case considers whether the procedure for opposing summary judgment set forth in Rule 56(e) necessarily precludes appellate consideration of evidence in the record that might defeat summary judgment, but which the nonmovant neglected to bring to the attention of the district judge.

Second, Judge Barksdale's quotation from <u>Fields</u> is actually a quotation from <u>John v. State of Louisiana</u>,[15] in which the court was quoting the argument of the defendant/movant.  But we did not resolve <u>John</u> according to the rule urged by the defendant in that case, finding instead that the factual issues raised by the <u>moving</u> party in its motion were sufficient to enable the <u>nonmovant</u> to overcome summary judgment.[16]  Returning to <u>Fields</u>, that case presented the same problem as <u>Lavespere</u> -- whether a party could introduce evidence for the first time in a motion for reconsideration of summary judgment.

Third, the Supreme Court's 1986 trilogy of cases on summary judgment does not abrogate the rule of <u>Higgenbotham</u>.  None of the cases dealt with the question of pointing out materials in the summary judgment record.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>[17] held that the evidence produced by the plaintiff in a predatory pricing case must tell a plausible story

---

[14]  940 F.2d 121 (5th Cir. 1991).

[15]  757 F.2d 698 (5th Cir. 1985).

[16]  <u>See</u> <u>John</u>, 757 F.2d at 712.

[17]  475 U.S. 574 (1986).

8

of conspiracy -- which usually includes showing a rational motive to conspire -- to create a genuine issue for trial. Anderson v. Liberty Lobby, Inc.[18] held that the evidentiary standard of proof that would be used at trial also applies to a ruling on a summary judgment motion, so that a public figure plaintiff in a libel action must show that a jury could find actual malice with "convincing clarity" in order to defeat a motion for summary judgment. Celotex Corp. v. Catrett[19] focuses exclusively on the moving party's burden, and contains no holding about the obligation of the nonmoving party to direct the district court's attention to evidence in the record which could defeat summary judgment.

Far from requiring that we discard the rule of Higgenbotham, the reasoning of the trilogy cases actually supports that rule. First, as the Court recognized in Celotex, Rule 56 places an initial burden on the moving party to establish his right to summary judgment.[20] When the record is bare of evidence that would support the pleading allegations of the plaintiff, a defendant "may rely upon the complete absence of proof of an essential element of the other party's case"[21] to satisfy this burden and establish his

---

[18] 477 U.S. 242 (1986).

[19] 477 U.S. 317 (1986).

[20] 477 U.S. at 323; see also id. at 328 (White, J. concurring). Because Justice White was the fifth vote, his understanding of the case "would seem to be controlling". Id. at 329 n.1 (Brennan, J. dissenting) (citing Marks v. United States, 430 U.S. 188, 193 (1977)).

[21] Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

right to summary judgment.[22]  If the nonmoving party will bear the burden of proof at trial, the moving party need not introduce evidence affirmatively disproving an element of the non-moving party's case.[23]  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."[24]  As explained by Professors Wright, Miller, and Kane, "the movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent."[25]

It will not always be enough for the moving party just to deny that there is sufficient evidence, even when the nonmoving party will bear the burden of proof at trial.  As Justice White explained in his concurrence in <u>Celotex</u>:

> [T]he movant must discharge the burden the Rules place upon him:  It is not enough to move for summary judgment without supporting the motion or with a conclusory assertion that the plaintiff has no evidence to prove his case.[26]

Yet that is exactly the tack taken by TRI with respect to the warning issues.  TRI filed affidavits and addressed the relevant evidence in the record with respect to the issues of successor

---

[22]  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.

[23]  <u>Id.</u> at 325.

[24]  <u>Id.</u>

[25]  10A Wright, Miller, & Kane, Federal Practice and Procedure § 2727, at 130.

[26]  <u>Celotex</u>, 477 U.S. at 328 (White, J., concurring).

10

liability and whether Thorotrast was actually administered in 1947, but with respect to the warning issues TRI simply made a "conclusory assertion" that "the following critical information cannot be documented on the basis of the evidence and the medical records that are available". TRI made this assertion even though there was already evidence in the record which, together with the details of the warning provided by the Skotaks in their response to TRI's summary judgment motion, provided a circumstantial basis for jury findings favorable to the plaintiff on the issues of warning adequacy and warning causation. This approach is insufficient to establish TRI's right to summary judgment on the warning issues.

In short, when the record already contains evidence that creates a genuine issue of material fact, Celotex requires a moving party to do more than simply answer that there is no evidence of that fact, even if the nonmovant will bear the burden of proof on that issue at trial. Celotex places the burden on the moving party to demonstrate that, given "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any",[27] there is not sufficient evidence to create a genuine issue with respect to a material fact. This holding is consistent with the Higgenbotham rule. Both decisions require the district court to consider the entire record in deciding whether summary judgment is appropriate -- Celotex implicitly by placing an initial burden on the moving party to demonstrate his right to judgment as a matter of law, and Higgenbotham explicitly. A

___

[27]  Fed.R.Civ.P. 56(c).

11

review, on appeal, of whether the moving party has satisfied its initial Celotex burden necessarily encompasses consideration of the entire record.[28]

While the Celotex Court does emphasize certain procedural aspects of the summary judgment process, the Court distributes the various summary judgment burdens in order to "isolate and dispose of factually unsupported claims or defenses ...."[29] Judge Barksdale's rule would not serve that purpose, but would force us to dispose of factually supported claims. I find such a rule inconsistent with the Celotex Court's explanation of the purposes behind the summary judgment process.

Finally, the plain language of Rule 56(c) directs a court considering a summary judgment motion to examine the entire record. Rule 56 authorizes summary judgment only if "[the evidentiary

_____

[28]   The Celotex Court also stated:

> The import of these subsections [of Rule 56] is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that [there is no genuine issue of material fact].

Celotex, 477 U.S. at 323 (emphasis added). I find the phrase "whatever is before the district court" to read most naturally as "whatever is in the record", rather than Judge Barksdale's suggested reading of "whatever is in the record that is specifically referred to by the parties during the summary judgment process". But it is not essential that my reading be the most natural, or even the only natural, reading of the phrase. As long as the Supreme Court's opinion can reasonably be read as consistent with the Higgenbotham rule, we are obliged to so read it.

[29]   Celotex Corp., 477 U.S. at 323-24.

material] <u>on file</u>, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[30] [Emphasis added]  As Judge Rubin wrote in <u>Higgenbotham</u>:

> "[Rule 56] does not distinguish between depositions merely filed and those singled out by counsel for special attention."[31]

Thus, I cannot agree that either <u>Nissho-Iwai</u> or <u>Impossible Electronic Techniques, Inc. v. Wackenhut Protective Serv., Inc.</u>[32] states the correct rule in this circuit.  Instead, I believe the earlier decision in <u>Higgenbotham</u> (which was followed in <u>Keiser</u> and <u>Nicholas Acoustics</u>) requires this Court to consider record evidence to which the nonmoving party has failed to refer.  As in <u>Nicholas Acoustics</u>, I believe that an appellate court is not free to ignore

---

[30]  Fed.R.Civ.P. 56(c).  While scientific articles are not specifically mentioned in the list of materials to be considered under Rule 56(c), the articles would, given a proper foundation, be admissible at trial under Fed.R.Evid. 803(18).  As such, they can be considered in resolving a motion fur summary judgment, unless the trial judge specifically rules that they would not be admissible.

[31]  <u>Higgenbotham</u>, 607 F.2d at 656.  I heartily agree with Judge Rubin's comment in note 3 of <u>Higgenbotham</u>:

> In this instance, as in many, we reverse the court for error in a matter in which it did not receive the assistance it was due from counsel....  [Plaintiff's counsel] did not ... call the court's attention by memorandum or otherwise to the deposition in the record. Defense counsel was content to submit its case in the most favorable posture without alerting the court to the minefield in the path he invited the court to take.

607 F.2d at 656 n.3.

[32]  669 F.2d 1026 (5th Cir. Unit B 1982).

13

evidence that comes to its attention.[33] Thus, in my view the journal articles must be considered in determining whether the summary judgment was proper.

Admittedly, if a specific issue is not raised in the district court, then we may appropriately resort to the plain error standard if a party attempts to raise that issue on appeal.[34] But, in this case, the Skotaks pointed to the warning issue that would preclude the grant of summary judgment. They were not attempting to rest on their unverified pleadings, but had introduced evidence that, together with the evidence already in the record, created a genuine issue with respect to the warning. There was no large record to scour. For these reasons, the scientific articles create a genuine issue of fact with respect to the issue of the warning. T h e litigation explosion in the federal court system, the consequent need for economy of judicial efforts, and the advantage of simplifying procedures, especially in the overburdened district courts, argue strongly for increasing use of summary judgments -- but not at the expense of the quality of justice. The first rule of the Federal Rules of Civil Procedure admonishes courts that the rules

> shall be construed to secure the just, speedy, and inexpensive determination of every action.

In this case justice cries out for a trial on the merits.

---

[33] See Nicholas Acoustics, 695 F.2d at 846.

[34] See, e.g., Impossible Electronics Techniques, Inc. v. Wackenhut Protective Sys., Inc., 669 F.2d 1026, 1033 n.7 (5th Cir. Unit B 1982).