68 F.3d 488
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Robert M. MASON, Plaintiff-Appellant,
v.
TAMPA G MANUFACTURING CO., Annwil Inc., Club Pro Products,
Inc., Wind and Shield Products and L.T. Hobbs,
Defendants-Appellees.
 No. 95-1184.
 United States Court of Appeals, Federal Circuit.
 Oct. 12, 1995.
 
 Before NIES, LOURIE, and RADER, Circuit Judges.
 Opinion for the court filed by Circuit Judge LOURIE. Dissenting opinion filed by Circuit Judge RADER.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Robert M. Mason appeals from the January 26, 1995 order of the United States District Court for the Northern District of Texas granting summary judgment of noninfringement in favor of Club Pro Products, Inc. ("Club Pro"). Mason v. Tampa G Mfg. Co., No. 3:93-CV-2574-AH (N.D.Tex. Jan. 26, 1995). Because the court did not err in granting summary judgment, we affirm.
 
 DISCUSSION
 
 2
 Mason owns U.S. Patent 4,098,536 directed to a weathershield for golf carts. The invention provides "a weathershield which will completely enclose both the occupant and club compartments of a golf cart while providing substantially weather tight access into and out of the cart." Col. 1, 11.61-64. To that end, the "lower edges [of the weathershield are] maintained in a position close to the cart so that it won't be disturbed or blown off by windy conditions." Col. 2, 11.21-23. Velcro strips, magnetic weights, or similar fasteners are positioned along the lower edges of the front, rear, and side walls of the weathershield to maintain the walls in place:
 
 
 3
 [T]he front, rear and side walls are maintained close to the cart by suitable means such as strips of a textile fastening material known as Velcro 28 (FIG. 1), magnetic weights 52 (FIG. 2), or the like, positioned along the lower edge of the weathershield 10. Where Velcro strips 28 are used, they are mated to Velcro strips 26 which are secured at corresponding intervals around the outside body of the cart.... Other means of maintaining the shield to the cart, including clamps, hooks, snaps, etc., could be employed so long as the attachment means is adequate to prevent wind and water from blowing under the shield or the shield being torn off by heavy winds.
 
 
 4
 Col. 3, 11.4-20.
 
 
 5
 In a first embodiment, shown in Figure 1, Velcro strips 28 are located along the lower edges of all four sides of the weathershield:
 
 
 6
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 7
 In a second embodiment, shown in Figure 2, magnetic weights 52 are positioned along the lower edges of all four sides of the weathershield:
 
 
 8
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 9
 The '536 patent contains two independent claims, claims 1 and 6, which read as follows:
 
 
 10
 1. A removable weathershield for use on golf carts of the type having a roof, open sides, and a passenger compartment, used to transport passengers and their equipment around a golf course, said weathershield comprising a sheet of flexible, water repellent material in a configuration including:
 
 
 11
 (a) a top wall having outer dimensions at least equal to the outer dimensions of the roof of the golf cart;
 
 
 12
 (b) front, side and rear walls all depending downwardly from the outer edges of said top wall portion and being of a length sufficient to enclose the open sides of the golf cart, said rear wall including means associated therewith for covering the club compartment of said golf cart;
 
 
 13
 (c) a transparent portion in at least the front wall for visibility in guiding the cart;
 
 
 14
 (d) access means in at least one of said side walls for moving in and out of the cart;
 
 
 15
 (e) means along the lower edges of said front, side and rear walls for maintaining said weathershield substantially adjacent the body of the golf cart;
 
 
 16
 whereby said weathershield may be placed down over the open sides of said golf cart during inclement weather to completely enclose said cart and removed for storage during fair weather. [Emphasis added.]
 
 
 17
 6. A weathershield for use on golf carts of the type having a roof, open sides, and a passenger compartment, used to transport passengers and their equipment around a golf course, said weathershield comprising a sheet of transparent, flexible and water repellent material in a configuration including:
 
 
 18
 (a) a top wall portion having outer dimensions at least equal to the outer dimensions of the roof of the golf cart;
 
 
 19
 (b) front, side and rear walls all depending downwardly from the outer edges of said top wall portion and being of a length sufficient to enclose the open sides of the golf cart, said rear wall including means associated therewith for covering the club compartment of said golf cart;
 
 
 20
 (c) access means in at least one of said side walls for moving in and out of the cart;
 
 
 21
 (d) means along the lower edges of said front, side and rear walls for releasably securing said weathershield to the body of the golf cart;
 
 
 22
 whereby said weathershield may be placed down over the open sides of said golf cart during inclement weather to completely enclose said cart and removed for storage during fair weather. [Emphasis added.]
 
 
 23
 Mason sued Club Pro alleging infringement of the '536 patent. Club Pro manufacturers a golf cart cover that is secured to a golf cart using elastic cords that hook into grommets on the cover's left and right sides. The cover lacks any fastener on its front and back sides, which hang down freely over the golf cart. Club Pro denied infringement and moved for summary judgment of noninfringement, arguing that its product lacks securing means on its front and rear walls as required by the claims. Mason cross-moved for summary judgment of infringement, agreeing with Club Pro that "[t]here are no disputed issues [of] fact on the issue of infringement," but arguing that summary judgment should be granted in its favor. The district court granted summary judgment in Club Pro's favor, noting that the '536 patent was cited by the U.S. Patent and Trademark Office (PTO) during prosecution of Club Pro's own patent covering the accused product. The court believed that it owed deference to the PTO's decision to grant Club Pro's patent, and that such grant precluded a finding of infringement with respect to the '536 patent. This appeal followed.
 
 
 24
 On appeal, Mason argues that the district court erred by relying on Club Pro's patent to preclude a finding of infringement. Mason asserts that the court essentially required him to prove the invalidity of Club Pro's patent in order to establish infringement of the '536 patent. We agree with Mason that the district court's opinion misstated the law. "[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell." Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 879 n. 4, 20 USPQ2d 1045, 1052 n. 4 (Fed.Cir.1991).
 
 
 25
 That the court's opinion contained faulty reasoning, however, does not necessarily mean that the court's grant of summary judgment was in error. As this court has repeatedly stated, we "review judgments, not opinions." Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir.1983); see also Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1574, 220 USPQ 584, 590 (Fed.Cir.1984) ("[A]ppellant must not only show error in reasoning, but error in result."). To prevail on appeal Mason must demonstrate that the court's grant of summary judgment was in error.
 
 
 26
 Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Johnston v. IVAC Corp., 885 F.2d 1574, 1576-77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995). We review de novo a district court's grant of summary judgment. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).
 
 
 27
 Mason argues, in conclusory fashion, that the "district court was presented with numerous genuine issues of material fact and for that reason could not grant a summary judgment of non-infringement. The basic operation of the device was disputed." We disagree. The structure of Club Pro's product was not genuinely disputed, nor was its operation. Mason did not come forward with evidence of disputed facts, but instead conceded in his own motion for summary judgment that "[t]here are no disputed issues [of] fact on the issue of infringement." The primary, if not sole, dispute between the parties concerned the meaning of the claims, a question of law, not fact. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc). We therefore agree with Club Pro that Mason did not establish that there were any genuine issues of material fact as to infringement. See SRI Int'l v. Matsushita Electric Corp. of Am., 775 F.2d 1107, 1116, 227 USPQ 577, 582 (Fed.Cir.1985) (in banc) (plurality opinion) ("The party opposing [a summary judgment] motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient.").
 
 
 28
 The question remains whether, on the undisputed facts, Club Pro was entitled to summary judgment. Determining whether a patent claim has been infringed requires, first, that the claim be properly construed to determine its meaning and scope. Markman, 52 F.3d at 976, 34 USPQ2d at 1326. Second, the claim as properly construed must be compared to the accused device to determine whether there has been infringement. Id. Claim construction is a question of law. Id. at 979, 31 USPQ2d at 1329. Determining whether the claim limitations cover the accused device is a question of fact. Id. at 976, 31 USPQ2d at 1327.
 
 
 29
 We turn first to claim interpretation. The parties dispute the meaning of "means along the lower edges of said front, side and rear walls for maintaining said weathershield substantially adjacent the body of the golf cart" (claim 1) and "means along the lower edges of said front, side and rear walls for releasably securing said weathershield to the body of the golf cart" (claim 6). Mason argues that the claims require some securing means, but do not require securing means located along each of the weathershield's four sides. Mason therefore contends that the claims encompass a cover secured to a golf cart by elastic cords that hook into grommets on the cover's left and right sides, without any fasteners on its front and back sides. Club Pro, on the other hand, contends that the claims require fasteners located along all four of the cover's sides. We agree with Club Pro.
 
 
 30
 The disputed claim limitations are in means-plus-function form and therefore "cover the corresponding structure ... described in the specification and equivalents thereof." 35 U.S.C. Sec. 112, p 6 (1988); see also In re Donaldson Co., 16 F.3d 1189, 29 USPQ2d 1845 (Fed.Cir.1994) (in banc). Accordingly, we construe the claims to require use of Velcro strips, magnetic weights, clamps, hooks, snaps, or equivalent fasteners. See col. 3, 11.4-20 of the '536 patent. In addition, we construe the claims to require that these fasteners be located "along the lower edges of [the weathershield's] front, side and rear walls." Apart from the claim language itself, our interpretation is supported by the specification and Figures 1 and 2 of the '536 patent, which show Velcro strips and magnetic weights, respectively, situated along all four sides of the weathershield. See Markman, 52 F.3d at 979, 34 USPQ2d at 1329 ("Claims must be read in view of the specification, of which they are a part."). There is no suggestion in the specification that the fasteners may be omitted from one or more of the cover's sides.
 
 
 31
 We therefore reject Mason's proposed claim construction because it is inconsistent with the specification and drawings, and would render superfluous the claim requirement for fasteners located along the cover's "front, side and rear walls." Mason "cannot, in effect, rewrite [his] patent claims to suit [his] needs in this litigation." Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 647, 33 USPQ2d 1038, 1040 (Fed.Cir.1994).
 
 
 32
 The claims require fasteners on each of the cover's sides. It is undisputed, however, that Club Pro's product lacks any fastener situated on its front and rear walls. Club Pro's cover uses fasteners (elastic cords) secured to the cover's side walls; its front and rear walls hang down freely over the golf cart. Accordingly, no fact-finder reasonably could find that the claims literally read on the accused device; summary judgment of no literal infringement was therefore appropriate. See Johnston, 885 F.2d at 1580, 12 USPQ2d at 1386 ("Where a claim does not read on an accused device exactly, there can be no literal infringement.").
 
 
 33
 A product that does not literally infringe a patent claim may nonetheless infringe under the doctrine of equivalents if there are "insubstantial differences between the claimed and accused products." Hilton Davis Chem. Co. v. Warner-Jenkinson Co., No. 93-1088, slip op. at 15 (Fed.Cir. Aug. 8, 1995) (in banc). Insubstantial differences may be found if the accused device "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc), cert. denied, 485 U.S. 961 (1988). That does not mean, however, that one may ignore claim limitations. Id. at 935, 4 USPQ2d at 1739. On the contrary, "[a] device that does not satisfy [a] limitation at least equivalently does not function in substantially the same way as the claimed invention." Id. at 937, 4 USPQ2d at 1741.
 
 
 34
 This principle is dispositive here. Club Pro's product lacks any Velcro strips, magnetic weights, clamps, hooks, snaps, or equivalent fastener situated along its front and rear sides, as required by the claims. Thus, because Club Pro's product does not contain an equivalent for every claim limitation, summary judgment of no infringement under the doctrine of equivalents was appropriate. See id.; see also Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1579, 27 USPQ2d 1836, 1841 (Fed.Cir.1993) ("[I]nfringement cannot be established unless every limitation of a claim is satisfied either exactly or by an equivalent in the accused device."). To hold otherwise would contradict "the fundamental principle that claims define the limits of patent protection." Charles Greiner & Co. v. Mari-Med Mfg., Inc., 962 F.2d 1031, 1036, 22 USPQ2d 1526, 1529 (Fed.Cir.1992).
 
 
 35
 Accordingly, we affirm the district court's grant of summary judgment of noninfringement.
 
 
 36
 RADER, Circuit Judge, dissenting.
 
 
 37
 Because the district court erred in the application of the law and genuine factual issues remain, I respectfully dissent.
 
 
 38
 The district court made a blatant error in granting summary judgment of noninfringement. The district court reasoned that Club Pro could not infringe the '536 patent because the PTO had granted Club Pro a later patent, the '275 patent, on its accused golf cart cover. According to the district court, "the PTO would not have issued the 275 patent had it determined that the description set out in the 275 application, which cited Plaintiff's 536 patent as prior art, infringed the earlier patent and/or merely replicated either the 536 patent other relevant prior art." Beyond this glaring error, the district court has no reasoning supporting its grant of summary judgment.
 
 
 39
 This court properly notes the district court's error, but then proceeds to act as a trial court and examine the summary judgment motion, rather than review the district court's decision for reversible error. Without the guidance, the context, or the full record available to the trial court, this court overlooks genuine issues of fact in its rush to reach summary judgment.
 
 
 40
 One important issue of fact is whether Club Pro's products infringe the '536 patent. The '536 patent claims "means along the lower edges" to attach the walls of the cover to the golf cart. Diagrams of Club Pro's Buggy Cover Deluxe appear to show attachment via a bungy cord at the four corners of Club Pro's golf cart cover. If attached at the corners, the Buggy Cover Deluxe would have attaching means on all four walls. Without citing to the technology, testimony, or other information from the record, this court's majority "finds" that the Buggy Cover Deluxe lacks fasteners on its front and back sides. This court strays from its appellate mission by resolving a clear factual question.
 
 
 41
 Moreover, these same photographs and diagrams of the Buggy Cover Deluxe raise the factual question of infringement under the doctrine of equivalents. Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1520-21, 35 USPQ2d 1641, 1647-48 (Fed.Cir.1995) (en banc ). In a previous summary judgment motion on the sole question of whether the Buggy Cover Deluxe infringed under the doctrine of equivalents, Club Pro's expert conceded a description of the cover directly relevant to infringement under the doctrine. While not part of this motion, such information may inform a court in ruling on a later summary judgment motion. Higgenbotham v. Ochsner Found. Hosp., 607 F.2d 653, 656-57 (5th Cir.1979).
 
 
 42
 Drawing all inferences for Mason, as a summary judgment motion requires, see Anderson v. Winter, 631 F.2d 1238, 1240 (5th Cir.1980); 10 Charles A. Wright et al., Federal Practice and Procedure Sec. 2716, at 643-46 (1983), I cannot escape the conclusion that this appellate court has ventured beyond its role to resolve factual issues.